**Billy Don SIMS and Yvonne Ava Sims, Plaintiffs-Appellees,**

v.

**Charles P. SPERRY, Third-Party Plaintiff-Appellant,**

v.

**TRANSAMERICA TITLE INSURANCE COMPANY, Third-Party Defendant-Appellee.**

**No. 90CA1064.**

Colorado Court of Appeals, Div. V.

March 12, 1992.

As Modified on Denial of Rehearing April 9, 1992.

Certiorari Denied Aug. 31, 1992.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Robert Simpson, Lakewood, for plaintiffs-appellees.

Williams, Trine, Greenstein & Griffith, P.C., Mari C. Bush, Cohen & Cohen, William M. Cohen, Boulder, for third-party plaintiff-appellant.

Dietze, Davis and Porter, P.C., Peter C. Dietz, Robyn W. Kube, Boulder, for third-party defendant-appellee.

Opinion by Judge DAVIDSON.

Third-party plaintiff, Charles P. Sperry, appeals from the summary judgment entered in favor of plaintiffs, Billy Don and Yvonne Ava Sims, for rescission of a warranty deed and from a judgment entered after a bench trial in favor of third-party defendant, Transamerica Title Insurance Company, on Sperry's claims of breach of its duties to defend and to indemnify. We affirm in part and reverse in part.

These issues arise out of a series of real estate transactions fraudulently conducted by real estate agent Kenneth Reese. In August 1985, Sperry invested $108,000 in four properties recommended to him by Reese. Reese delivered to Sperry warranty deeds to these properties, as well as contracts from third parties for the sale of three of these parcels. However, none of these contracts closed and Sperry demanded return of the earnest money deposits.

In response, Reese told Sperry that a wealthy buyer would purchase the properties if Sperry would release the original purchasers from their contracts. Sperry agreed, but again this deal failed.

Reese finally suggested that if Sperry would release this buyer as well, Reese would exchange Sperry's properties for other properties which would be easier to sell. Reese and Sperry executed this as a written settlement agreement between them.

As part of this settlement agreement, Sperry received from Reese warranty deeds and title insurance commitments from Transamerica for the new properties, which included parcels of land owned by the Simses and by Kenneth Wheeler. Transamerica had issued approximately 700 title policies in the past through Reese. Reese and Sperry signed the settlement agreement at a closing held at Transamerica's office, and the title insurance policies for the Simses' and Wheeler's parcels were issued to Sperry in May 1986.

In October 1986, Wheeler sued Reese seeking damages for fraud and sued Sperry seeking rescission of the deed. The Simses filed a similar suit against Reese and Sperry in April 1987, which was consolidated with the Wheeler action.

Sperry requested that Transamerica conduct his defense, but Transamerica determined that both Wheeler's and the Simses' claims against Sperry were outside the title insurance policies' scope of coverage or were within specific exclusions and therefore refused to defend Sperry in those actions. Thereafter, Sperry filed a breach of contract claim against Transamerica for its refusal to defend him in the two lawsuits.

In February 1987, the trial court entered a default judgment against Reese on a motion by Wheeler, and in April 1989, the court granted Wheeler's motion for summary judgment for rescission of the deed against Sperry.

In October 1987, the trial court entered a default judgment against Reese on a motion by the Simses. In July 1989, the trial court granted the Simses' motion for partial summary judgment for rescission of the deed which transferred the Simses' property to Sperry.

Sperry's claims against Transamerica were tried to the court in January 1990. It found that there was no duty to indemnify and no duty to defend. Sperry appeals both the summary judgment in favor of the Simses and the judgment in favor of Transamerica.

## I.

Sperry raises two contentions of error regarding the entry of summary judgment against him on the Simses' rescission claim. We note initially that this court affirmed the trial court on these same issues in Sperry's appeal from the summary judgment for rescission entered in favor of Wheeler in *Wheeler v. Sperry,* (Colo.App. No. 90CA0336 and 90CA0387, June 20, 1991) (not selected for publication).

## A.

We disagree with Sperry's first contention that the Simses' judgment against Reese for damages for loss of the Sperry property was an election of remedies and that it was therefore error for the trial court to allow the Simses to seek rescission of the deed against him.

■ Election of remedies is a harsh doctrine which should not be unduly extended. *H & K Automotive Supply Co. v. Moore & Co.,* 657 P.2d 986 (Colo.App.1982). The purpose of this doctrine is to prevent a double recovery by the innocent party. *Stewart v. Blanning,* 677 P.2d 1382 (Colo. App.1984).

■ We note initially that Sperry sued Reese, in part, in order to make a claim under Colorado's Real Estate Recovery Fund. Section 12–61–301, et seq., C.R.S. (1991 Repl.Vol. 5B). One requirement for payment under this statute is that the applicant obtain a "final judgment ... against a real estate broker [for] negligence, fraud, willful misrepresentation or conversions of trust funds." Section 12–61–302(1), C.R.S. (1991 Repl.Vol. 5B).

Here, the original default judgment against Reese included $90,000 as the value of the parcel of property Reese had fraudulently transferred from the Simses to Sperry. Thereafter, the trial court granted the Simses' motion to amend the default judgment to provide for an appropriate reduction of the judgment against Reese in the event of a rescission of the transfer of the property to Sperry.

By its ruling, the trial court ensured that the Simses would not receive a double recovery and accomplished the purpose of the election of remedies doctrine. Thus, there was no error.

## B.

Sperry next contends that the trial court erred in granting the Simses' motion for summary judgment on their rescission claims. We disagree.

In evaluating a summary judgment, a reviewing court may determine only whether the law was correctly applied and whether a genuine issue of material fact exists. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

Here, the trial court determined that: [T]here is no genuine issue of material fact with regard to the question of delivery of the deed, it being clear that Reese was not authorized to deliver the deed, and finding further that Mr. and Mrs. Sims lacked an intent to convey present interest in the property to Charles P. Sperry, and that there was no consideration for the deed.

Delivery is essential to the complete execution of a deed so as to pass title. *Larison v. Taylor*, 83 Colo. 430, 266 P. 217 (1928). Delivery requires proof that the grantor parted with possession and control or any power over the deed, for the benefit of grantee, and that he intended to do so presently and *unconditionally*. Without such intent, the grantor's delivery is not binding, even if the deed is subsequently recorded. *Curtiss v. Ferris*, 168 Colo. 480, 452 P.2d 38 (1969).

Here, contrary to Sperry's assertion, there was evidence before the court that the Simses did not intend to pass a present interest to Sperry unconditionally and that the Simses received no consideration.

In the contract for sale, purportedly from Sperry, the Simses agreed to sell the property upon the "conditions stated herein." Sperry's payment to the Simses of the $90,000 purchase price was a condition of the transfer. However, in his deposition Sperry stated that he paid no money to the Simses, or to Reese on their behalf, but rather that Sperry forgave Reese's personal debt to Sperry in exchange for the property. Additionally, Billy Sims stated in his deposition that he received nothing in return for the transfer.

Because this evidence was unrefuted, no genuine issue of material fact existed as to the question of delivery, and title did not pass. *See Curtiss v. Ferris, supra.*

## II.

Sperry's next contentions relate to his claims against Transamerica. At trial, Sperry and Transamerica stipulated that the court's decision regarding Transamerica's duties to defend and to indemnify Sperry under the facts of Wheeler's lawsuit would govern in the Simses' lawsuit. Therefore, no evidence concerning the Simses' action was presented to the court, and we refer hereafter only to Wheeler's claims against Sperry.

## A.

Sperry contends that the trial court erred in ruling that Transamerica had no obligation to defend him against Wheeler's claims. We agree.

The determination of the duty to defend depends on the terms of the insurance policy and the interpretation of those terms based upon principles of contract law. An insurer seeking to avoid its duty to defend bears a heavy burden. Its duty to defend arises when the underlying complaint against the insured alleges any facts that might fall within coverage of the policy. It is enough that the allegations state

a claim which is potentially or arguably within the policy coverage, and if there is doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. However, there is no duty to defend if the insurer can establish that the allegations in the complaint are either clearly not covered by the insuring language or are solely and entirely within exclusion provisions. *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991); *see American Motorists Insurance Co. v. General Host Corp.*, 946 F.2d 1489 (10th Cir.1991). We note that the trial court did not have the benefit of our supreme court's decision in *Hecla Mining* when it issued its rulings.

Here, Transamerica's duty to defend is contained in the policy's "Conditions and Stipulations." It provides:

> The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured ... to the extent that such litigation is founded upon an alleged defect ... insured against by this policy.

The general coverage provision within Transamerica's policy to Sperry provides:

> Subject to the [exclusion, exceptions and] the conditions and stipulations hereof, Transamerica ... insures ... against loss or damages, sustained or incurred by the insured by reason of:
>
> 1. Title to the estate ... being vested otherwise than as stated therein;
> 2. Any defect in ... such title.

This general provision is followed by an express exclusionary provision which narrows the type of defect for which coverage is afforded:

> The following matters are expressly excluded from the coverage of this policy:
>
> . . . .
>
> 3. Defects ... (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured

claimant; (c) resulting in no loss or damage to the insured claimant; ... or (e) resulting in loss or damages which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

Wheeler alleged in his complaint against Sperry that Reese had forged the Sperry–Wheeler contract for sale; that Reese had obtained Wheeler's signature on a warranty deed which did not reference a legal description on its face; that Sperry had caused a deed for a separate tract of land owned by Wheeler to be recorded; that Wheeler received no consideration from Sperry; that Wheeler never agreed to transfer the property to Sperry; that Sperry knew or should have known that the deed was defective or fraudulently obtained; and that Wheeler was the rightful owner of the fee simple title.

■ Initially addressing whether the facts alleged present circumstances within the scope of the policy's general coverage, we conclude that, as a matter of law, these defects are within the general scope of coverage. In so doing, we reject Transamerica's argument that Wheeler's claims are not risks of the type covered by title insurance because they challenge the transaction in which Sperry received title but not the quality of his title.

The policy states that the title is vested in Sperry and, by its plain language, provides that Transamerica covers losses incurred by reason of the title "being vested otherwise than as stated therein." Wheeler's complaint alleged that he, not Sperry, "is the rightful owner of the fee simple title." Thus, he alleged a failure of title which is a challenge to the title quality.

■ Moreover, the policy insures against *any* defect in the insured's title. Wheeler's complaint alleged many off-record risks, such as alteration, improper notarization, and improper delivery of the deed which, absent specific exclusionary language, are defects typically covered by title insurance. *See* D. Burke, *Law of Title Insurance* § 1.3.2 at 23 (1986); *Wheeler v. Reese*, 835

P.2d 572 (Colo.App.1992). We conclude that these are challenges to Sperry's title which, unless expressly excluded, would give Sperry a legitimate expectation of defense.

Next, we interpret the terms of the policy exclusions to see whether, as Transamerica asserts, Wheeler's allegations fall within the exclusionary language. We conclude they do not.

■■■■ The policy excludes from coverage those defects "created, suffered, assumed or agreed to" by the insured, but it does not define these terms. Although no Colorado cases have construed this phrase, its meaning is fairly well established in other jurisdictions.

Generally, the term "created" has been construed to require a conscious, deliberate, and sometimes affirmative act "intended to bring about the conflicting claim," in contrast to merely an inadvertent or negligent act. *American Savings & Loan Ass'n v. Lawyers Title Insurance Corp*, 793 F.2d 780 (6th Cir.1986); *Laabs v. Chicago Title Insurance Co.*, 72 Wis.2d 503, 241 N.W.2d 434 (1976) (conscious, deliberate causation actually resulting in the defect).

On the other hand, "created" also can be interpreted to mean, as Transamerica asserts, a deliberate act which the insured intentionally undertook and which led to the defect, even though the insured did not necessarily intend to cause the defect. *See Transamerica Title Insurance Co. v. Alaska Federal Savings & Loan Ass'n*, 833 F.2d 775 (9th Cir.1987); *Safeco Title Insurance Co. v. Moskopoulos*, 116 Cal. App.3d 658, 172 Cal.Rptr. 248 (1981) ("We believe the word 'created' means conscious, deliberate causation [which may be] susceptible of the significance of bringing out a result inadvertently or negligently").

Since it is reasonably susceptible to more than one meaning, we conclude that the term "created" is ambiguous in the context of Sperry's policy. Therefore, we construe the ambiguity in favor of the insured. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra.* In this case, the construction most favorable to Sperry is that

the insured must have intended the defect to occur.

Similarly, the terms "suffered," "assumed", and "agreed to" imply intent to bring about the defect. *American Savings & Loan Ass'n v. Lawyer's Title Insurance Corp., supra.*

Here, Wheeler's complaint alleged that Sperry entered into an agreement with Reese, but it alleged no misconduct or fraud by Sperry. Thus, Wheeler did not allege that Sperry had the requisite intent to bring about the title defect, and therefore, Sperry's alleged conduct did not fall within this exclusionary provision.

The policy also excludes defects "not known to the Company ... but known to the insured claimant." This is inapplicable for two reasons.

First, according to the policy, the insured's knowledge must be actual, not constructive. Under the duty to defend analysis of *Hecla Mining*, if any alleged facts might fall within coverage, then the insurer must defend. Wheeler alleged that Sperry either "knew or should have known that the deed was defective." Because the allegation is in the disjunctive, it allowed the possibility that Sperry had no actual knowledge of the defects, which is a circumstance which might support coverage under the title policy and which would not be under this exception.

Moreover, Sperry's knowledge notwithstanding, there are no allegations pertaining to what Transamerica did or did not know. Therefore, Wheeler's allegations are not "solely and entirely within" this exclusion. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

A third exclusion in the policy is for defects resulting in "no loss" to the insured. Wheeler's allegations, if sustained, would result in title being returned to Wheeler. Thus, Sperry would sustain a loss of the title. *See Laabs v. Chicago Title Insurance Co., supra* (the failure to keep what one has or believes he has is a loss).

Finally, the exclusion for defects "resulting in loss or damage which would not have been sustained if the insured claimant had paid value" does not apply to preclude coverage. Since we have already concluded that the complaint alleged a loss, the issue is whether the exclusion requires that value be paid *to the grantor.*

In accord with the rules of contract interpretation, we look to the policy language to determine the rights and obligations of the parties. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra.* The exclusion states only that value is to be paid, not that it must be paid to the grantor. In fact, Transamerica acknowledges that there are circumstances—as when the grantor is part of a transaction in which he consents to the conveyance of his property to one who is not paying him for such property—in which the insurer may have an obligation to defend even though the insured might not pay the grantor directly for the property.

Moreover, we are persuaded that a primary purpose of this exclusion is to protect the insurer from liability in those jurisdictions—not including Colorado—in which recording act statutes grant later bona fide purchasers for value priority over an earlier grantee who paid no value. *See* D. Burke, *Law of Title Insurance,* § 3.8 at 84 (1986) ("The policy is in effect following the priorities established by the recording acts, although the wording of the exclusion is vague enough that a layman cannot be expected to know of this effect.") Thus, the import of the exclusion is the payment of value, not to whom value is paid.

We conclude, therefore, that payment to the grantor is not a requirement of the exclusion, *see Conner v. Transamerica Insurance Co.,* 496 P.2d 770 (Okla.1972) (words of exclusion are strictly construed against the insurer), and since Wheeler's complaint did not allege that Sperry paid no value at all, but only that Wheeler did not receive value, Transamerica cannot avoid its duty to defend by relying on this exclusion.

Thus, because the complaint alleged facts which might fall within coverage of the policy and which are not solely and entirely within any exclusion provisions, *see Hecla Mining Co. v. New Hampshire Insurance Co., supra,* Transamerica had a duty to defend Sperry against Wheeler's allegations.

### B.

Sperry's next contention is that the trial court erred in determining that there was no duty to indemnify. Specifically, he argues that the trial court erred in its determination that the policy exclusions 3(a), (b), (c) and (e) applied to preclude coverage. We agree that this was error.

The duty to indemnify is determined differently from the complaint, which if sustained, would impose liability under the policy. In contrast, whether coverage is ultimately available under the contract is based upon evidence presented at trial. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

Here, the trial court determined that exclusion 3(a) for defects "created, suffered, assumed or agreed to" by the insured applied to eliminate coverage. However, we have already concluded that 3(a) requires the insured to intend the defect to occur. Intent implies knowledge of the intended defects by the insured, *see American Savings & Loan Ass'n v. Lawyers Title Insurance Corp., supra,* and the trial court determined that Sperry had no actual knowledge of the defects. Specifically, based upon evidence presented at trial regarding Sperry's many dealings with Reese, it found that "Sperry was under a duty to make a reasonable inquiry into the conveyance, which inquiry would have revealed fraudulent conduct on the part of Reese."

Exclusion 3(b) for defects "known to the insured claimant" is likewise inapplicable because, by the terms of the policy, "known" refers to the insured's actual knowledge and the trial court determined that Sperry had no actual knowledge of the defects.

We also reject the trial court's conclusion that exclusion 3(c) for defects "resulting in no loss" to the insured applies. Inasmuch as Sperry lost the title to the property, the trial court erroneously found that "Sperry has not established that he suffered any

loss." *See. Laabs v. Chicago Title Insurance Co., supra* (having contracted to insure against a title defect, the company cannot now claim that the insured has suffered no loss by reason of the fact that the title to the disputed property was defective).

Finally, we conclude that exclusion 3(e) for defects "resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy" is inapplicable. Here, the trial court found that Sperry received the title in exchange for forgiveness of Reese's $108,000 debt to him. Although this value was paid to Reese, not Wheeler, the exclusion does not require that value be paid to the grantor. Because we must interpret words of exclusion strictly against the insurer, *see Conner v. Transamerica Insurance Co., supra*, this exclusion does not preclude coverage.

Based upon the trial court's findings of fact, we conclude, therefore, as a matter of law, that there was coverage under the policy and that Transamerica had a duty to indemnify Sperry for his loss of title.

### C.

Because it will arise on remand, we address the damages to which Sperry is entitled for Transamerica's breach of its duties to indemnify and to defend.

The title policy provides:

6.(a) The liability of the Company under the policy shall in no case exceed the least of:

(i) the actual loss of the insured claimant; or

(ii) the amount of insurance in Schedule A.

Generally, actual loss for a complete failure of title is the value of the property up to the limit of the policy. *See* R. Powell, *Powell on Real Property* § 1054 (1991); *Miebach v. Safeco Title Insurance Co.*, 49 Wash.App. 451, 743 P.2d 845 (1987). Here, Transamerica stipulated in its trial data certificate that the "fair market value of the subject parcels of real property, at the material times, exceeded the face amount of the subject policies of title insurance."

Thus, Transamerica must indemnify Sperry the face amount of the policy.

In addition, the damages for Transamerica's failure to defend Sperry include the attorney fees and other necessary and reasonable litigation expenses arising from Sperry's defense against Wheeler, as well as attorney fees from this action, including this appeal. *Wheeler v. Reese, supra.*

The judgment as to the issues of election of remedies and rescission is affirmed. The judgment as to the issues of Transamerica's duty to defend and duty to indemnify is reversed, and the cause is remanded to the trial court to determine and to enter judgment against Transamerica for Sperry's reasonable attorney fees and litigation expenses, as well as for the face value of the policy.

PLANK and ROTHENBERG, JJ., concur.