Filed 10/7/14; pub. order 10/28/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RNT HOLDINGS, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>UNITED GENERAL TITLE<br>INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B250089<br>(Los Angeles County<br>Super. Ct. No. BC470486) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael M. Johnson, Judge.  Affirmed.

Law Offices of W. Gary Kurtz and W. Gary Kurtz for Plaintiff and Appellant.

Early Sullivan Wright Gizer & Mcrae, Eric P. Early, William A. Wright, Christopher I. Ritter and Kevin S. Sinclair for Defendant and Respondent.

In the underlying action, appellant RNT Holdings, LLC (RNT) asserted claims for breach of insurance contract, bad faith, and unfair business practices against respondent United General Title Insurance Company (United). The trial court granted summary judgment and judgment on the pleadings regarding those claims. On appeal, RNT challenges only the grant of summary judgment on its claim for breach of insurance contract, contending the trial court erroneously determined that the claim failed in light of the terms of RNT's policy. We affirm.

## RELEVANT FACTUAL AND
## PROCEDURAL BACKGROUND

A. *Lender's Title Policy*

The key issues before us concern the lender's title insurance policy that United issued to RNT in 2008 (the policy). Pertinent here are two provisions, namely, an exclusion and a condition of coverage. The policy stated "The following matters are expressly excluded from coverage of this policy . . . . : 3. Defects, liens, encumbrances, adverse claims, or other matters [¶] (a) created, suffered, assumed, or agreed to by [RNT] . . ." (exclusion 3(a)). In the portion of the policy entitled "Conditions of Coverage," the policy also provided in section 10(b) that absent exceptional circumstances, "[t]he voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of [United] . . . . " (condition 10(b)).

B.  *Events Preceding Underlying Action*[1]

The following facts are not in dispute:  In June 2008, David Bergstein bought a house in Hidden Hills from Richard and Helen Ziff for $5.9 million (the property).  Bergstein sought loans to finance the purchase from two sources, Surfside Funding Corporation (Surfside) and Ronald N. Tutor.  Bergstein arranged for a $3.5 million loan from Surfside to be secured by a first deed of trust; the balance of the purchase funds were to be provided by Tutor or one of his business entities.  To facilitate the transaction involving Tutor, on June 11, 2008, attorney Susan Tregub formed RNT and acted as its manager.  Although Bergstein preferred that his personal trust hold the title to the property, Surfside required him to hold the property as an individual.  During the pertinent period in June 2008, Tregub was also the trustee of Bergstein's personal trust.

On June 17, 2008, the day before Bergstein's purchase of the property closed, Bergstein executed a $3.5 million promissory note and deed of trust in favor of RNT (2008 RNT trust deed) with the intention that the latter would encumber the property, albeit in second position, subordinate to the Surfside deed of trust.  On behalf of RNT, Tregub contacted Orange Coast Title Company (Orange Coast) to obtain a lender's title policy, and sent the 2008 RNT trust deed

---

[1]    Our summary of the facts disregards certain items of evidence offered by RNT that the trial court excluded in ruling on United's motion for summary judgment.  Under the summary judgment statute, we examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have been appropriately sustained.  (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 711; Code Civ. Proc., § 437c, subd. (c).)  Here, United asserted numerous evidentiary objections to RNT's showing, which the trial court sustained in their entirety.  Although RNT does not challenge those rulings on appeal, its opening brief relies on the evidence.  Because RNT's failure to contest the rulings forfeits any contention of error regarding them, we exclude the pertinent evidence from our discussion.

to Orange Coast. Tregub did not advise Orange Coast that Bergstein intended to transfer his title to the property to his trust.

On June 18, 2008, Bergstein's purchase of the property closed, and at 8:00 a.m. that morning, a grant deed was recorded transferring the property from the Ziffs to Bergstein. On the same day, Bergstein executed a separate grant deed transferring the property from himself to Tregub, as trustee of Bergstein's trust (Tregub grant deed). Tregub prepared that grant deed.

On June 20, 2008, the Tregub grant deed was recorded. On the same day, Tregub wrote to Orange Coast in her capacity as "authorized signatory" for RNT, stating: "This will acknowledge that I understand that you will be filing the [2008 RNT trust deed] with the Los Angeles County Recorder[']s office and that [it] will be behind the [Surfside trust deed]. . . ." Tregub did not mention the Tregub grant deed. Three days later, on June 23, Orange Coast recorded the 2008 RNT trust deed and arranged for United to issue the underlying policy.

In September 2010, Kia Jam acquired Tutor's interest in RNT. In December 2010, RNT made a second loan of $4 million to Bergstein for the purpose of paying off the Surfside loan. In arranging the loan, which was secured by a deed of trust on the property (2010 RNT trust deed), RNT discovered that the Tregub grant deed had been recorded prior to the 2008 RNT trust deed.

In April 2011, RNT made a claim to United under the policy, asserting the existence of a title defect. Later, in May 2011, Bergstein's trust sold its interest in the property to Sever-North, Inc. (Sever-North), the sole shareholder of which is Bergstein's trust. Sever-North refinanced the loans from RNT, and executed a promissory note for $4.6 million and a trust deed in favor of KJMI Holdings, Inc. (KJMI), which was also owned by Jam.

4

During that transaction, Jam authorized RNT's manager, Ray Reyes, to execute two reconveyances with respect to the 2008 and 2010 RNT trust deeds. The reconveyance regarding the 2008 RNT trust deed stated that as "all sums secured by [that deed] have been fully paid," RNT reconveyed "all the estate, title and interest acquired and now held by [RNT] in [that deed]." Before the trial court and on appeal, RNT has maintained that the purpose of the reconveyance regarding the 2008 RNT trust deed "was merely to make clear that [the 2008 RNT trust deed] did not encumber the [p]roperty. In reality, [that deed] had never encumbered the property and this paper trail was necessary to give a comfort level to a new lender."

C. *Underlying Action*

In September 2011, RNT commenced the underlying action against United. RNT's second amended complaint (SAC), filed April 16, 2012, asserted a single claim against United for breach of an insurance contract. The SAC alleged the existence of the following title defect: "[O]n June 23, 2008, at the time of the issuance of [the policy], the insured property described in the policy was in fact and unbeknownst to [RNT] owned by . . . Tregub, as [t]rustee of [Bergstein's personal trust] . . . . [¶] . . . Effectively, the policy . . . was to insure that [the 2008 RNT trust deed] against the property would be in second position; however, it was not. Accordingly, what was supposed to be an insured secured promissory note against the property was in reality an unsecured promissory note." The SAC further alleged that United failed to act on RNT's claim regarding the defect, and that the property had been sold to a third party "without [RNT's] $3,500,000.00 promissory note being paid off."

In January 2013, United filed a cross-complaint against RNT for rescission of the insurance policy and declaratory relief, and also sought summary judgment

5

on the second amended complaint, arguing that the claim for breach of insurance contract failed in light of exclusion 3(a) and condition 10(b). United contended that Tregub's conduct on behalf of RNT and Bergstein's personal trust created the purported title defect, and that RNT terminated the policy's coverage in 2011 by voluntarily releasing its interests under the 2008 RNT trust deed. While United's summary judgment motion was pending, RNT filed a cross-complaint against United, asserting claims for bad faith and unfair business practices (Bus. & Prof. Code, § 17200 et seq.).

On April 12, 2013, the trial court granted United's motion for summary judgment. Following that ruling, United requested judgment on the pleadings regarding RNT's cross-complaint, which the trial court also granted. After the trial court entered judgments in favor of United and against RNT on RNT's second amended complaint and cross-complaint, United dismissed its cross-complaint.

## DISCUSSION

RNT contends the trial court erred in granting summary judgment on its claim for breach of insurance contract. For the reasons explained below, we disagree.[2]

A. *Standard of Review*

Generally, "[s]ummary judgment is proper if there is no triable issue of material fact and the moving party is entitled to summary judgment as a matter of

---

[2]    As RNT does not challenge the propriety of judgment on the pleadings regarding its other claims, RNT has forfeited all contentions of error regarding those claims. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

law. (Code Civ. Proc., § 437c.)" (*National Auto. & Cas. Ins. Co. v. Underwood* (1992) 9 Cal.App.4th 31, 36.) We review the trial court's ruling on United's motion for summary judgment de novo. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819.)

As we explain below (see pts. B - D., *post*), there are no material factual disputes, and the key issues concern the proper interpretation of the pertinent policy. Because there is no cognizable extrinsic evidence bearing on the meaning of the policy, its interpretation is a matter of law for our independent determination. (*National Auto. & Cas. Ins. Co. v. Underwood*, *supra*, 9 Cal.App.4th at p. 36.)[3]

B. *Nature of Purported Title Defect*

At the outset, we examine the nature of the title defect, if any, established by the undisputed facts. The SAC alleges that because Bergstein transferred his title to Tregub as trustee of his trust before June 23, 2008 -- that is, when the 2008 RNT trust deed was recorded -- the property never secured RNT's 2008 loan to Bergstein. On appeal, RNT expands on that allegation, contending that the title defect "consists of the fact that the lien of the [2008 RNT trust deed] did not attach

---

[3]     To the extent our inquiry requires us to interpret the terms of the policy, we apply established rules of contract interpretation. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470.) Under these rules, "'the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18-19.)

to [the property] because [Bergstein] did not hold title at the time the lien was *executed* and *subsequently recorded*." (Italics added.) RNT thus offers two distinct theories regarding the purported defect. First, RNT suggests that the 2008 RNT trust deed attached no valid lien to the property because Bergstein executed that trust deed on June 17, 2008, the day before his purchase of the property closed. Second, RNT maintains that because Tregub as trustee held title to the property when the 2008 RNT trust deed was recorded, RNT's lien never encumbered the property.

We reject RNT's contentions, which misidentify the title defect (if any) created by the transactions from June 17 to 23, 2008. As explained below, the 2008 RNT trust deed imposed a valid lien on the property, and both of RNT's theories regarding the nature of the defect fail. Rather, the only *potential* title defect (if any) was that a third party who obtained the property as a bona fide purchaser for value might take the property free of RNT's lien.[4]

---

[4]      We recognize that the trial court, in granting summary judgment, did not identify the precise nature of the title defect or determine whether the 2008 RNT trust deed imposed a valid lien on the property. However, we may affirm the summary judgment on a theory not relied upon by the trial court, provided that the parties have had an adequate opportunity to address that theory. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39; Code Civ. Proc., 437c, subd. (m)(2).)

That requirement is satisfied here. Before the trial court and in its respondent's brief on appeal, United has argued that the 2008 RNT trust deed imposed a valid lien on the property, and that the defect (if any) concerned only future bona fide purchasers for value. United first raised that theory in its reply to RNT's opposition to the motion for summary judgment, and United's brief on appeal also asserts it. We therefore conclude that the theory is properly available to us as a ground for affirming summary judgment. (See *Byars v. SCME Mortgage Bankers, Inc., supra,* 109 Cal.App.4th at p. 1147; *Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 471, fn. 39.)

We begin with RNT's first theory, namely, that the 2008 RNT trust deed attached no valid lien to the property because Bergstein executed that deed before his purchase of the property closed. When a creditor executes a trust deed or mortgage to secure a loan before acquiring title to the relevant property, the trust deed or mortgage ordinarily attaches a lien to the property as soon as the creditor obtains that title.[5] (*Barberi v. Rothchild* (1936) 7 Cal.2d 537, 535-536; *Perego v. Seltzer* (1968) 260 Cal.App.2d 825, 829; Civ. Code, §§ 1106, 2930.) As explained in *Perego*, "it is well settled that a trust deed creates a valid lien on real property to secure a debt for which it is executed, even though the trustor has no title to the property at the time of the execution of the instrument, provided he subsequently acquires title thereto during the life of the deed of trust. Title to real property acquired after it is mortgaged is deemed to be covered by the lien on the theory that the mortgagor is estopped from denying title under such circumstances." (260 Cal.App.2d at p. 829.) Accordingly, the 2008 RNT trust deed imposed a valid lien on the property when Bergstein acquired title to it.

RNT's second theory also fails. Recordation of a trust deed is not usually required for the validity of a trust deed, but merely affects its potential efficacy regarding subsequent bona fide purchasers for value. (*Wells Fargo Bank v. PAL Investments, Inc.* (1979) 96 Cal.App.3d 431, 438; *Boye v. Boerner* (1940) 38 Cal.App.2d 567, 569-570; Civ. Code, § 1217.) The main purpose of the recording laws is "to protect those who honestly believe they are acquiring a good title, and who invest some substantial sum in reliance on that belief." (*Beach v. Faust* (1935) 2 Cal.2d 290, 292-293.) Generally, to be a bona fide purchaser for value, the buyer must (1) purchase the property in good faith for value*,* and (2)

---

[5] Generally, "in California there is little practical difference between mortgages and
*(Fn. continued on next page.)*

have no knowledge or notice -- actual or constructive -- of the asserted rights of another. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251; *Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 364.) Ordinarily, a buyer satisfying those elements "takes the property free of such unknown rights. [Citations.]" (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451.)

In view of these principles, the events following Bergstein's acquisition of title to the property, up to and including the recording of the 2008 RNT trust deed, did not invalidate the lien imposed on the property by that deed. It is undisputed that on June 17, 2008, Tregub contacted Orange Coast in her capacity as RNT's manager and forwarded the 2008 RNT trust deed to Orange Coast. For that reason, Tregub was aware of the 2008 RNT trust deed when Bergstein executed the Tregub grant deed, that is, the grant deed conveying title to the property to Tregub as trustee of Bergstein's trust. Tregub's knowledge of the 2008 RNT trust deed precluded her from being a bona fide purchaser for value when she acquired title as the trustee of Bergstein's trust. Accordingly, as trustee, Tregub took title subject to RNT's lien.

Furthermore, the events culminating in the recording of the 2008 RNT trust deed created only a limited *potential* title defect. The belated recording of the 2008 RNT trust deed was irrelevant to whether the property remained subject to RNT's lien after Tregub acquired title to it, in view of her pre-existing knowledge of the 2008 RNT trust deed. Rather, the events leading up to the recording of the 2008 RNT trust deed had implications *only* for third parties unaware of those events. Because the Tregub grant deed was recorded on June 20, 2008, three days before the 2008 RNT trust deed was recorded, a future buyer of the property might

---

deeds of trust." (*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553.)

10

have been able to show that he or she had taken title free of the lien imposed by the 2008 RNT trust deed due to insufficient notice of that lien.

In an effort to support the existence of the defect alleged in the SAC, RNT directs our attention to a treatise stating that the party securing a loan with a trust deed "must own the interest to be encumbered." (1 Bernhardt, California Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2012) Basics of Real Property Secured Transactions, § 1:39, p. 35.) However, immediately following that statement, the treatise observes: "The ownership requirement is qualified by the doctrine of after-acquired title. Thus, a mortgage is valid even when the mortgagor does not acquire title to the security until a later time." (*Ibid*.) In addition, the treatise states that "a lien is . . . valid between the immediate parties to it even if it is not recorded." (2 Bernhardt, California Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2014) Multiple Security, Obligations, and Parties, § 9:44, p. 9-41.) The treatise thus supports our conclusions. In sum, the 2008 RNT trust deed imposed a valid lien on the property, and the sole *potential* title defect (if any) relating to that trust deed concerned future sales of the property to bona fide purchasers for value.

C.  *Summary Judgment on the Basis of Condition 10(b)*

We turn to whether RNT's claim for breach of insurance contract failed in light of condition 10(b), which states that a voluntary release of RNT's "mortgage" would terminate United's liability under the policy. In granting summary judgment, the trial court concluded that RNT's 2011 reconveyance regarding the 2008 RNT trust deed operated to "relieve[] [United] of its duties." For the reasons discussed below, we agree.

11

1. *Condition 10(b)*

Condition 10(b) states: "10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY [¶]. . . [¶] (b) The voluntary satisfaction or release of the Insured Mortgage *shall terminate all liability of* [*United*] except as provided in Section 2 of these Conditions." (Italics added.) The latter section provides: "2. CONTINUATION OF INSURANCE[:] The coverage of this policy shall continue in force . . . in favor of [RNT] . . . , but *only so long as* [*RNT*] *retains an estate or interest in the Land*, *or holds an obligation secured by a purchase money Mortgage given by a purchaser* . . . . This policy shall not continue in force in favor of any purchaser from [RNT] . . . of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to [RNT]" (condition 2). (Italics added.)

As no California court has interpreted these provisions in circumstances resembling those before us, we find guidance from two out-of-state decisions. In *First Midwest Bank, N.A. v. Stewart Title Guar. Co.* (2005) 355 Ill.App.3d 546, 548-549 [823 N.E.2d 168, 171-172] (*First Midwest Bank*), the title insurer issued a policy to a lender regarding a loan that financed a purchase of property. In obtaining the loan, the borrowers executed a mortgage imposing a lien on the property. (*Ibid*.) The policy contained provisions materially similar to those stated above. (823 N.E.2d. at p. 174.) Later, the borrowers obtained two additional loans from the lender secured by the property. (*Id*. at pp. 171-172.) The terms of those loans obliged the borrowers to use the proceeds to pay off the original loan. (*Ibid.*) After the borrower did so, the lender executed a full release of the borrowers' original mortgage. (*Ibid*.) Later, the lender initiated an action for declaratory relief, seeking a declaration that the insurer's policy -- which was applicable only to the original loan -- provided coverage for a restrictive covenant on the property

that the lender discovered only after the execution of the release. (*Id*. at pp. 172-173.)

In affirming summary judgment in favor of the insurer on the lender's complaint, the appellate court determined that condition 10(b) terminates an insurer's liability when the loan is paid off or the related mortgage is released, unless (as stated in condition 2) the property is conveyed to a third party in such a manner that the lender retains an interest in it. (*First Midwest Bank*, *supra*, 823 N.E.2d at pp. 176-177.) Noting that the pertinent property had not been conveyed to a third party, the appellate court concluded that prior to the discovery of the defect, the insurer's liability terminated for two independent reasons: the loan had been paid in full, and the lender had released the mortgage and all its interests. (*Id*. at pp. 176-177.)

In *Morrison v. Wells Fargo Bank, N.A.* (M.D. Pa. 2010) 711 F.Supp.2d 369, 374, a man and his wife executed a mortgage that purported to impose a lien on property owned by the plaintiff, whose name was identical to that of the man who signed the mortgage. In connection with the mortgage, an insurer issued a lender's title policy, which contained a coverage condition similar to condition 10(b). (*Morrison,* at pp. 375, 388-389.) After the plaintiff initiated a tort action against the lender, the lender commenced a cross-action against the insurer. (*Id*. at pp. 388-389.) Later, while the plaintiff's action was pending, the mortgage was paid in full, and the insurer declined to provide any further defense to the lender in the plaintiff's action. (*Id*. at pp. 375-376.) The lender then amended its complaint to assert claims for breach of insurance contract and bad faith predicated on that denial. (*Ibid*.) Relying on the policy's coverage condition, the trial court granted summary judgment in the insurer's favor on those claims, concluding that the

insurer's obligations ended when the mortgage was paid in full. (*Id*. at pp. 386-390.)

## 2. *Analysis*

In assessing the trial court's grant of summary judgment, we look first at the allegations in the SAC, which frame the issues pertinent to a motion for summary judgment. (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662.) According to the SAC, the pertinent title defect was that the 2008 RNT trust deed failed to encumber the property, rendering Bergstein's 2008 promissory note to RNT unsecured. The SAC further alleged that United failed to act on RNT's claim regarding the defect, and that the property had been sold to a third party "without [RNT's] $3,500,000.00 promissory note being paid off."

The claim for breach of insurance contract, as alleged in the SAC, fails in light of the undisputed facts and condition 10(b). To begin, as explained above (see pt. B., *ante*), prior to May 2011, when Bergstein's trust sold its interest in the property to Sever-North, the defect alleged in the SAC did not exist: the 2008 RNT trust deed, in fact, attached a valid lien to the property. Nor did any such defect emerge during the May 2011 transactions due to Sever-North's purchase of the property. Sever-North did not take title to the property free of the lien imposed by the 2008 RNT trust deed, as it cannot be regarded as a bona fide purchaser for value. The principals involved in the transaction, including Bergstein and Jam, were aware of the 2008 RNT trust deed, and Bergstein's trust was the sole shareholder in Sever-North. Indeed, in asserting that the May 2011 transactions were intended to "make clear" that the 2008 trust deed did not impose a valid lien on the property, RNT acknowledges that the transactions were founded on an awareness of that trust deed.

14

Furthermore, the May 2011 transactions ended United's liability for any title defect, in view of condition 10(b.)  In May 2011, RNT executed a reconveyance regarding the 2008 RNT trust deed, stating that "all sums secured by [that deed] have been fully paid," and releasing "all the estate, title and interest acquired and now held by [RNT] in [that deed]."  Because the reconveyance fully released RNT's interest in the property, it terminated United's obligations pursuant to condition 10(b).

Relying on the principle that exclusions in an insurance policy are ordinarily construed narrowly, RNT contends that the reconveyance did not terminate United's liability, arguing that condition 10(b) cannot be interpreted "to include the release of non-existing liens."  However, as explained above, the record establishes that the 2008 RNT trust deed imposed a valid lien on the property prior to the reconveyance.  Summary judgment on RNT's claim for breach of insurance contract was thus properly granted on the basis of condition 10(b).[6]

D.  *Summary Judgment on the Basis of Exclusion 3(a)*

The trial court also determined that RNT's breach of insurance contract claim failed due to exclusion 3(a), which precludes coverage for "[d]efects, liens, encumbrances, adverse claims, or other matters [¶] (a) created, suffered, assumed, or agreed to by [RNT]."  In so concluding, the court relied primarily on *Safeco*

---

[6]     We note that summary judgment would have been proper even had the purported defect alleged in the SAC existed, that is, even had no valid lien attached to the property due to the transactions in June 2008.  As explained in *First Midwest Bank*, a full release of the insured's interests in the pertinent property, *by itself*, terminates the insurer's liability.  (*First Midwest Bank, supra,* 823 N.E.2d at pp. 176-177.)  Here, RNT executed such a release after it discovered the purported defect alleged in the SAC.  Accordingly, RNT's conduct terminated United's liability regarding that purported defect.

*Title Ins. Co. v. Moskopoulos* (1981) 116 Cal.App.3d 658 (*Safeco Title*). We discern no error in the court's ruling.

In *Safeco Title*, a real estate broker learned that a residential property was subject to a foreclosure sale, and decided to buy it before the sale occurred. (*Safeco Title, supra*, 116 Cal.App.3d at p. 662.) When the broker and the property owners fell into a dispute regarding the terms of the escrow, the broker filed an action against the owners, recorded a lis pendens, and informed them he would take further legal action if they tried to sell the property to someone else. (*Ibid.*) After negotiations, the parties entered into a settlement of the broker's action. (*Id*. at p. 663.) Under the settlement, the owners sold the property to the broker, who dismissed his action against them. (*Ibid.*) After the sale of the property closed, the owners initiated a tort action against the broker predicated on his pre-sale conduct. (*Ibid.*) The broker tendered the defense of that action to his title insurer, which declined to provide a defense. (*Ibid.*) When the broker sought declaratory relief against the insurer, the trial court issued a declaratory judgment that the insurer had no duty to provide a defense. (*Id*. at p. 661.)

The appellate court affirmed, holding that the owners' action fell outside the policy's insuring clauses, as that action did not relate to the broker's title to the property, but to the manner in which he bought it. (*Safeco Title, supra,* 116 Cal.App.3d at p. 665.) The appellate court further determined that even if the owners' action had fallen within the insuring clauses, coverage for it would be barred under exclusion 3(a). (*Safeco Title,* at pp. 666-667.) The court reasoned that in exclusion 3(a), the term "created" means "'conscious[] deliberate causation.'" (*Safeco Title,* at p. 667.) Because the broker's conduct prior to the close of the sale was "'intentional and deliberate and not inadvertent or mistaken,'"

16

the court concluded that exclusion 3(a) precluded coverage for the owners' action. (*Safeco Title*, *supra,* at p. 667.)

The rationale in *Safeco Title* is applicable here. As explained above (see pts. B. & C., *ante*), because the transactions involving Tregub in June 2008 did not result in the defect alleged in the SAC, RNT's claim for breach of insurance contract fails. Nonetheless, even if those transactions had resulted in the alleged defect, exclusion 3(a) would bar coverage for it, as Tregub's conduct was "'intentional and deliberate and not inadvertent or mistaken.'" (*Safeco Title*, *supra*, 116 Cal.App.3d at p. 667.)

The record establishes that throughout the June 2008 transactions, Tregub acted on behalf of RNT, Bergstein's trust, and Bergstein himself. Indeed, Bergstein testified in his deposition that Tregub then represented Bergstein, Tutor, and their "common entities," and that she "handl[ed] everything." Furthermore, her conduct carried out Bergstein's acknowledged desire to secure financing for his purchase of the property from RNT and the transfer of the property's title to his trust. Every action Tregub engaged in was thus intentional and deliberate. That she may not had intended to bring about a defect through her conduct, or may not have known that any defect might occur, is immaterial to the application of exclusion 3(a), as there was no suggestion in *Safeco Title* that the broker intended his pre-sale conduct to provoke the owners' tort action against him, or knew that the action would occur.

*Hansen v. Western Title Ins. Co.* (1963) 220 Cal.App.2d 531, upon which RNT relies, is distinguishable. There, some developers obtained the right to develop real property under a contract prepared by a title insurer, which also provided a title insurance policy to the developers. (*Id*. at pp. 533- 535.) After the developers failed to buy the property, a party with an interest in the development

project sued them. (*Id*. at p. 534.) The developers tendered the defense of the action to the title insurer, which refused to provide a defense. (*Ibid*.) When the developers sued the insurer, the trial court determined that the developers had not created the claim against them, for purposes of exclusion 3(a). (*Hansen v. Western Title Ins. Co., supra,* at p. 536.) The appellate court affirmed that ruling, concluding that the claim against the developers was rooted in the contract prepared by the insurer, which was poorly drafted and ambiguous, and which the developers had signed through "inadvertence." (*Id*. at pp. 535-536.) The court narrowly confined its holding, stating: "[W]e limit our ruling to a case in which the insured did not intentionally produce the claim and in which the insurer itself had opportunity to know of the defect." (*Id*. at p. 536, italics added.) Here, in contrast, the documents involved in the June 2008 transactions were not misunderstood by the participants, and United was unaware of the transactions that purportedly created a defect.

RNT also directs our attention to two out-of-state decisions, *Ariz. Title Ins. & Trust Co. v. Smith* (1974) 21 Ariz.App. 371 [519 P.2d 860] and *Sims v. Sperry* (Colo.App. 1992) 835 P.2d 565 (*Sims*). In *Ariz. Title,* the City of Tucson imposed a special assessment on an apartment complex, which was not fully paid. (519 P.2d at pp. 860-861.) Two years later, when an investor bought it, the title insurer failed to list the assessment as an excluded defect in the title policy. (*Ibid*.) The appellate court rejected the insurer's contention that the assessment fell outside the policy's coverage due to exclusion 3(a), observing that the investor had not created the assessment. (*Arizona Title, supra,* at p. 863.) As explained above, that is not the case here.

In *Sims*, an investor signed a settlement agreement to resolve disputes with a real estate agent, apparently unaware that the trust deeds he received through the

18

agreement had been obtained through fraud by the agent. (*Sims, supra,* 835 P.2d at pp. 566-567, 570.) When the owners of the interests underlying the trust deeds sued the investor, he tendered the defense of the action to his title insurer, which declined to provide a defense on the basis of exclusion 3(a). (*Sims, supra,* at pp. 569-570.) In rejecting that contention, the appellate court declined to follow *Safeco Title*, reasoning that exclusion 3(a) is ambiguous, and that Colorado law required it to adopt the interpretation most favorable to the insured, namely, "that the insured must have intended the defect to occur." (*Sims, supra,* at p. 570.)

Sims is distinguishable, as there is no evidence that Bergstein or Tregub lacked the rights to the property essential to the June 2008 transactions. In addition, the rationale in *Sims* is inapplicable. Under California law, when an exclusion is ambiguous, the ambiguity is resolved in the insured's favor, albeit in the manner "consistent with the insured's reasonable expectations." (*E.M.M.I. Inc. v. Zurich American Ins. Co.*, *supra*, 32 Cal.4th at pp. 470, 473.) Only if an inquiry into those expectations does not resolve the ambiguity does a court adopt the interpretation least favorable to the insurer as """"the party who caused the uncertainty to exist."""" (See *id*. at pp. 470-471, quoting *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763.) In our view, *Safeco Title* reflects the correct determination regarding an insured's reasonable expectations under the exclusion. In sum, summary judgment on RNT's claim for breach of insurance contract was properly granted on the basis of exclusion 3(a).

## DISPOSITION

The judgment is affirmed.  United is awarded its costs on appeal.


MANELLA, J.


We concur:


EPSTEIN, P.J.


COLLINS, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RNT HOLDINGS, LLC,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>UNITED GENERAL TITLE<br>INSURANCE COMPANY,<br><br>      Defendant and Respondent. | B250089<br>(Los Angeles County<br>Super. Ct. No. BC470486)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:*

      The opinion in the above-entitled matter, filed on October 7, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

      There is no change in judgment.

21

EPSTEIN, P. J.,       MANELLA, J.,       COLLINS, J.